## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

OSCO MOTORS COMPANY, LLC,
d/b/a OSCO MOTORS CORPORATION,
and ENGINE DISTRIBUTORS, INC.,

        Petitioners,

v.                                  **MEMORANDUM OF LAW & ORDER**
                                    Civil File No. 14-887 (MJD/JJK)

QUALITY MARK, INC.,

        Respondent.

Alan L. Frank, Alan L. Frank Law Associates PC, and Amanda K. Schlitz
and Elizabeth C. Kramer, Stinson Leonard Street LLP, Counsel for
Petitioner.

Stephen W. Hance, Hance Law Firm, Ltd., Counsel for Respondent.

### I.   INTRODUCTION

This matter is before the Court on Petitioner Engine Distributors,

Inc. and Osco Motors Company, LLC d/b/a Osco Motors Corporation's

Motion to Vacate Arbitration Award [Docket No. 2]; and Respondent

Quality Mark, Inc.'s ("Quality Mark") Motion to Confirm Arbitration

Award and for Interest and Costs [Docket No. 26].  After a thorough

review of the record and consideration of the parties' arguments, the Court

concludes that there is no valid reason to vacate the arbitration award

under the Federal Arbitration Act.  Therefore, the Court confirms the

arbitration award.

## II.   BACKGROUND

### A. Factual Background

#### i.  The Relationship of the Parties

Quality Mark entered into a contract with Engine Distributors, Inc.

and "Osco Motors Corporation, a Pennsylvania Corporation,"

(collectively, "EDI"), effective January 1, 2011, entitled "Manufacturing

Agreement."  (Hance Aff., Docket No. 19, Ex. A, "Manufacturing

Agreement.")  Osco Motors Corporation was not actually a registered

corporation; the correct name of the company is "Osco Motors Company,"

and it is a Limited Liability Company.  (Hance Aff., Exs. C, H.)

In the Manufacturing Agreement, Quality Mark agreed to fabricate

"tooling" and to manufacture marine engine manifolds, exclusively for

EDI.  (Manufacturing Agreement, at 1, ¶ 3.2.)  "Tooling" is a machine used to bend metal.  An "engine manifold" is the part of an engine that connects different pipes for moving fuel and air into the engine or for carrying gas away from the engine.

The Manufacturing Agreement contained an arbitration clause, which required dispute resolution through the American Arbitration Association's Commercial Arbitration Tribunal.  (Manufacturing Agreement § 10.11 ("[A]ny unresolved controversy or claim arising out of or relating to this Agreement . . . shall be resolved by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules . . . .").)  This clause also stated that "[a]ny judgement rendered by the arbitrator shall be final and non-appealable . . . ."  (Id.)

### ii. Relevant Manufacturing Agreement Terms Regarding Customer Lists and Tooling

Two relevant provisions in the Manufacturing Agreement concern (1) confidential information and (2) ownership of the tooling.  With respect to confidential information, the parties agreed that:

at all times during the term of this Agreement and thereafter, to hold in strict confidence and not to use, except for the benefit of the other party or to disclose to any person, firm, or corporation without written authorization of the other party any confidential information of the other party.  The term "confidential information" means any party's proprietary information, technical data, trade secrets, or know-how, including, but not limited to . . . customer lists and customers (including, but not limited to, customers of the party) . . . .

(Id. ¶ 9.2.)

Regarding ownership of the tooling, the Manufacturing Agreement stated the following:

Osco will pay fifty percent (50%) of cost of the tooling including installation costs needed to produce The Product and Quality Mark shall pay the other fifty percent (50%) of the tooling through its manufacturer.  After the first five (5) year term of this Agreement as defined in Article 5, Osco will have full ownership of the tooling.  If Osco desires to move the tooling before the first five (5) year term ends.  [sic] Osco will pay Quality Mark fifty percent (50%) of the tooling costs. During the term of this Agreement, the tooling may not be used to manufacture The Product for others.

(Id. ¶ 3.2.)

### iii.  Termination of Manufacturing Agreement and Initiation of Arbitration

On February 28, 2013, the parties agreed to terminate the

Manufacturing Agreement.  (Hance Aff., Ex. B, "Award" ¶ 2; Ex. D ("Amy

4

yes by the end of February our contract will be canceled if late payments

are not in line.").)  After a failed mediation, EDI filed Demands for

Arbitration with the American Arbitration Association on May 21, 2013

and, as amended, May 30, 2013.  (Hance Aff., Ex. E.)  In the Demands, the

sole claimant was identified as "Osco Motors Corporation."  (Id.)  The

Demands stated the following allegations:

> Quality Mark materially breached key provisions of an
> agreement entered into between the parties and has continued
> to breach the agreement by openly and directly selling Osco
> product to Osco's customers.  In addition to these breaches
> QMI [Quality Mark] tortiously interfered with the prospective
> sale of Osco to a third party [Sierra].  This act caused [Sierra]
> to cease negotiations and terminate its inquiry into the
> potential purchase of Osco.

(Id.)

Because "Osco's" filings did not include EDI as a claimant, Quality

Mark sought consent to include EDI as a party for Quality Mark's

counterclaim; however, "Osco's" lawyer refused consent.  (Hance Aff., Ex.

G.)  Quality Mark therefore brought a separate arbitration case on June 12,

2013, against EDI, which was then consolidated by agreement.  (See Frank

Aff., Ex. C.)  Quality Mark's Demand for Arbitration sought recovery of

over $1,000,000 in unpaid product and tooling invoices.  (Id.)

### iv.  Discovery Leading Up to Arbitration Hearing

The parties prepared for their arbitration, which was to be decided

by a single arbitrator from the American Arbitration Association.  Before

the arbitration, there was substantial discovery whereby depositions were

taken and the parties exchanged over 75,000 pages of documents.  (See,

e.g., Hance Aff. ¶ 9; Ex. K.)  On October 9, 2013, the parties briefed and

argued cross motions to compel discovery.  (Hance Aff., Exs. I, J; Frank

Aff., Exs. F, G.)  In EDI's motion, it requested to inspect tooling and

products at a facility in Taiwan owned by Quality Mark's Taiwan affiliate.

(Frank Aff., Ex. F, at 1.)  Their request explained that "[a] physical

inspection of [Quality Mark]'s manufacturer is necessary to understand

what tooling has been fabricated, what product has actually been

manufactured, and what product has been altered.  Only an inspection of

[Quality Mark]'s manufacturer's foundry can reveal these facts."  (Id.)  EDI

also stated that "[a] physical inspection of [Quality Mark]'s inventory is

essential to discover the efforts [Quality Mark] has made to mitigate its alleged damages based on the unpaid invoices of product directed to Osco." (Id. at 7.)

On October 16, 2013, the Arbitrator denied EDI's discovery motion to inspect the manufacturing facility in Taiwan. (Frank Aff., Ex. G, at 2.) Additionally, EDI scheduled a deposition for Quality Mark's President and the President of Quality Mark's Taiwanese affiliates; however, EDI later decided not to take these depositions. (See Hance Aff., Ex. L.) Neither party sought an extension or postponement of the arbitration hearing. (Hance Aff. ¶ 19.)

### v.  The Arbitration and the Arbitrator's Findings

On January 13, 2014, a four-day arbitration began. (Award, at 1.) During the hearing, no witnesses were prevented from testifying; no material evidence was refused to be entered into evidence; and no direct or cross examinations were materially limited. (Hance Aff. ¶ 19.) The Arbitrator published the arbitration award on March 11, 2014. (Award, at 7.)

With respect to Quality Mark's invoices to EDI, the Arbitrator

determined that, "[v]ery soon after signing the contract EDI started to

breach the Agreement," and these breaches were "blatant and material."

(Id. ¶ 2.)  At the time of the arbitration, there were substantial unpaid

invoices owed by EDI to Quality Mark.  (Id.)  The Arbitrator noted EDI's

argument "that [Quality Mark] impeded EDI's ability to take care of the

invoices by not answering some inquiries"; however, the Arbitrator found

the argument unpersuasive.  (Id.)  The Arbitrator also determined that

"EDI did not contest the invoices, it simply did not pay, and there [were]

many explicit admissions that EDI owed the money [Quality Mark] said it

owed."  (Id. ¶ 6.)

Because of this, the Arbitrator found that all of Quality Mark's

invoices "were correctly billed to EDI."  (Id.)  He concluded that EDI's

President "saw schemes and problems where none existed."  (Id. ¶ 3.)

"[EDI's President] chose what to pay and what not to pay according to his

then current financial situation and his belief, starting quite early in the

relationship, that [Quality Mark] and/or a company called Sierra were plotting to steal his customers."  (Id.)

The Arbitrator then addressed EDI's challenge of Quality Mark's right to sell products to EDI's former customers, which alleged that Quality Mark could not use customer lists because they were "confidential information" under the Manufacturing Agreement.  (See id. ¶ 4.)  The Arbitrator rejected this challenge and denied EDI's claim for misuse of confidential information regarding the customer lists because "EDI itself repudiated the contract by its action.  Whether it is called being barred by one's own breach of contract or estoppel, EDI's claim is barred."  (Id.)  The Arbitrator noted that "[t]here are serious questions as to whether customer names were trade secrets under the circumstances."  (Id.)

Regarding EDI's claim that Quality Mark tortiously interfered with the sale of Osco assets to Sierra, the Arbitrator concluded that the claim failed, noting that "[EDI's President] did not like the discussions in which he was not involved, and tended to see schemes and problems where none existed."  (Id. ¶ 3.)

9

Finally, with respect to damages, the Arbitrator decided that "[Quality Mark's] action to sell inventory was an appropriate mitigation action, saving both companies money by selling product rather than continuing to build up claims against each other while inventory sat in Taiwan and customers didn't get product." (Id. ¶ 4.)  The Arbitrator then determined that "[Quality Mark] gets the tooling created under the [Manufacturing] Agreement, free of claims of any kind from EDI." (Id. ¶ 6.)  Furthermore, the Arbitrator stated that "[t]his award will subtract from what [EDI] owes [Quality Mark] any tooling invoices actually paid by [EDI] for tooling so [EDI] will have no investment in any of it, notwithstanding it did realize profits from the new tooling during the [Manufacturing Agreement]." (Id. ¶ 4(e).)

The Arbitrator decided the disputes in Quality Mark's favor and awarded $302,052.00 as well as interest against the outstanding invoices at a rate of 8%. (Award ¶¶ 5, 7.)

## B.  Procedural Background

On approximately March 31, 2014, Quality Mark filed a Motion to

Confirm Arbitration Award in the Fourth Judicial District in and for

Hennepin County, Minnesota.  (See Ex. List, Docket No. 35, Ex. A.)

Around the same date, EDI filed a Motion to Vacate Arbitration Award in

this Court.  [Docket No. 2]  On April 10, 2014, EDI removed the state court

action to this Court.  [Docket No. 10]  The two matters were consolidated

on April 25, 2014.  [Docket No. 21]  On May 14, 2014, Quality Mark filed a

Second Motion to Confirm Arbitration Award.  [Docket Nos. 26, 31]  On

June 27, 2014, the Court heard oral argument on both motions.

## III.    DISCUSSION

EDI argues that the Court should vacate the arbitration award on

two grounds: (1) the arbitrator refused to hear material evidence, and (2)

the arbitrator exceeded his powers by fashioning an award that is contrary

to the express terms of the Manufacturing Agreement.  On the other hand,

Quality Mark argues that the Court should confirm the arbitration award

because (1) the arbitration award is unreviewable, and (2) EDI's arguments

are meritless.  Quality Mark also requests attorney's fees and prejudgment
interest.

For reasons explained below, the Court denies EDI's motion to
vacate the arbitration award, and the Court grants Quality Mark's motion
to confirm the arbitration award.  The Court will not award attorney's fees,
but the Court awards prejudgment interest.

### A. Standard of Review

"A court's review of an arbitrator's final decision is extremely
narrow."  Wakeman v. Aqua2 Acquisition, Inc., Civil No. 10-4538, 2011 WL
666028, at *3 (D. Minn. Feb. 14, 2011).  When reviewing arbitration awards,
courts give the underlying award "an extraordinary level of deference."
Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers
(Pace), Local 7-0159, 309 F.3d 1075, 1080 (8th Cir. 2003).

The Federal Arbitration Act ("FAA"), at 9 U.S.C. §§ 1-16, created "a
liberal federal policy favoring arbitration agreements."  Moses H. Cone
Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), superseded by
statute on other grounds.  Both EDI and Quality Mark's motions are

brought pursuant to the § 10(a) of the FAA.  This section provides the

grounds upon which "the United States court in and for the district

wherein the [arbitration] award was made may make an order vacating

the award."  9 U.S.C. § 10.  Those grounds are the exclusive grounds upon

which a court may vacate an arbitration award.  <u>Hall Street Assocs., LLC v.</u>

<u>Mattel, Inc.,</u> 552 U.S. 576, 586 (2008).

The two grounds that potentially apply to the present case are:

"Where the arbitrators were guilty of . . . refusing to hear evidence

pertinent and material to the controversy . . . [or] Where the arbitrators

exceeded their powers . . . ."  9 U.S.C. § 10(a)(3), (4).

### B.  Whether this Action Is Reviewable

As an initial matter, Quality Mark argues that the Court should not

hear EDI's motion to vacate because, pursuant to the parties'

Manufacturing Agreement, the arbitration award was final and not

appealable.  (Manufacturing Agreement § 10.11 ("Any judgement

rendered by the arbitrator shall be final and non-appealable and may be

entered in any court having jurisdiction thereof pursuant to applicable

law.").)  The Court finds Quality Mark's argument to be unpersuasive.

Several courts have determined that, despite similar language in

arbitration agreements, arbitration awards are reviewable for allegations

consistent with the grounds from § 10 of the FAA.  See, e.g., Rollins, Inc. v.

Black, 167 Fed. App'x 798, 799 n.1 (11th Cir. 2006) (explaining that

"binding, final, and non-appealable" awards can be appealed for abuse of

authority, bias, and disregard of the law); Commc'ns Consultant, Inc. v.

Nextel Commc'ns of the Mid-Atlantic, Inc., 146 Fed. App'x 550, 552 (3d

Cir. 2005) (holding that an arbitration award that was "unappealable" was

still reviewable for allegations of corruption, fraud, or partiality).

Furthermore, some courts, like the Ninth Circuit, have held that "9 U.S.C. §

10(a), the statutory grounds for vacatur in the FAA, may not be waived or

eliminated by contract."  In re Wal-Mart Wage & Hour Empl. Practices

Litig. v. Class Counsel & Party to Arbitration, 737 F.3d 1262, 1268 (9th Cir.

2013).  This case further provides that, if parties were able to waive this

section of the FAA, "the balance Congress intended would be disrupted,

14

and parties would be left without any safeguards against arbitral abuse."

Id.

Quality Mark raises the case of <u>MACTEC, Inc. v. Gorelick</u> as an

example where a motion to vacate was dismissed because the contractual

language in the parties' agreement provided that the arbitration award

was final and non-appealable.  <u>MACTEC, Inc. v. Gorelick</u>, 427 F.3d 821,

830 (10th Cir. 2005).  However, <u>MACTEC</u> actually held that arbitration

clauses that prohibit <u>appellate review</u> of a district court's order confirming

an arbitration award are valid.  <u>Id.</u> at 830 ("[W]e hold that contractual

provisions limiting the right to appeal from a district court's judgment

confirming or vacating an arbitration award are permissible, so long as the

intent to do so is clear and unequivocal.").  <u>MACTEC</u> is therefore not

analogous and only lends support for the Court's review of the arbitration

award.  <u>Id.</u> ("[W]e do not have a situation in which there is no judicial

review at all, nor a situation where a court is asked to enforce an

arbitration award without being given the authority to review compliance

of that award with the FAA.").

The Eighth Circuit has not directly assessed clauses that employ the same language as the clause in the parties' Manufacturing Agreement prohibiting appeal and ensuring finality of the arbitration award. Considering the approaches reviewed above, the Court interprets the clause as the parties' waiver of an appeal <u>on the merits</u>. <u>Rollins</u>, 167 Fed. App'x at 799 n.1 ("A 'binding, final, and non-appealable' arbitral award does not mean the award cannot be reviewed.  It simply means the parties have agreed to relinquish their right to appeal the merits of their dispute; it does not mean the parties relinquish their right to appeal an award resulting from an arbitrator's abuse of authority, bias, or manifest disregard of the law.")  Accordingly, the Court will review the arbitration award, but only on the grounds outlined in § 10 of the FAA.  Osco's motion raises issues within those grounds.

### C.  Refusal to Hear Evidence

EDI argues that the Arbitrator was guilty of misconduct by refusing to hear evidence when he denied EDI's request for an inspection of Quality Mark's Taiwan facility.  The Court concludes that the arbitrator's decision did not amount to misconduct under the FAA.

16

The FAA provides that a district court may vacate an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).  "[I]n making evidentiary determinations, an arbitrator need not follow all the niceties observed by federal courts."  Hasel v. Kerr Corp., Civ. No. 99-1376, 2010 WL 148437, at *3 (D. Minn. Jan. 12, 2010) (citation omitted).  "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award"; however, an arbitrator should still provide each of the parties with "an adequate opportunity to present its evidence and argument."  See id. at *4 (citation omitted).

During the arbitration, Quality Mark produced invoices for manifolds and tooling that it allegedly produced.  EDI argued that Quality Mark's invoices billed EDI for product and tooling that did not exist.  EDI asserts that an inspection was the only way to prove that Quality Mark's invoices were illegitimate, and an inspection would have allowed EDI to verify what Quality Mark had actually manufactured.  Furthermore, EDI

17

asserts that the Arbitrator did not have any evidence to doubt that the invoices were illegitimate.

EDI also argues that inspection would have been necessary to proving its own claim that Quality Mark had improperly taken the Osco line of business, and the arbitrator's denial of the inspection prevented EDI from challenging Quality Mark's mitigation efforts.  EDI submits that there was no valid reason to deny the inspection, as the costs for EDI's trips to Taiwan were contemplated in the Manufacturing Agreement, and therefore expected and not unduly burdensome.  EDI argues that while the Arbitrator concluded that EDI's President "saw schemes and problems where none existed," the Arbitrator could not know whether those schemes and problems existed without considering what EDI could have found in an inspection.  (See Award ¶ 3.)  EDI concludes that, by denying the inspection request, the Arbitrator refused to hear evidence on a material issue; this prejudiced EDI and deprived EDI of a fair hearing.  The Court disagrees.

The Court concludes that the Arbitrator did not impermissibly refuse to hear material evidence under the FAA.  His ruling is more appropriately characterized as a discovery decision, and the Court must afford the arbitrator great deference on matters not contemplated by § 10 of the FAA.  See, e.g., Bain Cotton Co. v. Chestnutt Cotton Co., 531 Fed. App'x 500, 501 (5th Cir. 2013) (discovery issues in arbitration are not grounds for vacatur under the FAA).  Even if the Arbitrator's decision was a refusal to hear evidence, it was a well-reasoned decision that did not violate the FAA because the record indicates that the sought-after evidence was not pertinent and material to the controversy.

First, the inspection sought by EDI was not the sole source of material evidence for EDI, as EDI was able to obtain other material evidence that could address its dispute regarding the invoices.  For example, EDI had the opportunity to depose Quality Mark's President and the President of its Taiwanese affiliates; these depositions could have been used to discover information EDI thought it could obtain through an inspection of the manufacturing facility.  Because of this, the present case

is distinct from other cases where no "other evidence was available to substantiate or to refute" a material issue. See, e.g., Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985) (granting vacatur where discovery was denied where no other material evidence was available). Considering the availability of other evidence and the absence of limitations at the arbitration hearing, the Arbitrator's denial of the inspection was not a deprivation of EDI's opportunity to present evidence and argument.

Additionally, the record supports that the evidence sought by EDI was not material to the controversy. The Arbitrator found that the record did not support EDI's theory Quality Mark was trying to steal EDI's customers, which was one of the reason EDI requested an inspection. (Award ¶ 3.) Because EDI's theory was unsupported, the proposed inspection in Taiwan did not have an adequate basis, and it was reasonable for the Arbitrator to deny the discovery motion. Furthermore, without exceptional circumstances, the Court "may not overturn an arbitration award based on the arbitrator's determination of the relevancy

or persuasiveness of the evidence submitted by the parties." <u>Swink & Co., Inc. v. Norris & Hirshberg, Inc.</u>, 845 F.2d 789, 789 (8th Cir. 1988) (citing <u>Hoteles</u>, 763 F.2d at 39-40).  The Court finds no exceptional circumstances here.

EDI's alternative reason for the inspection—that the invoices were incorrect and it had been overbilled—is found nowhere in its Demands for Arbitration, Statement of Claim, or Summation Brief.  (<u>See</u> Hance Aff., Exs. E, R; Frank Aff., Ex. A.)  In fact, the record indicates that the invoices were a materially uncontested issue during the arbitration.  (<u>See</u> Hance Aff., Ex. S (showing an excerpt illustrating EDI's President's evasive answers regarding tooling invoices); Ex. T (providing the testimony of Quality Mark's President that EDI never contested the invoices).)  Therefore, the evidence sought was not pertinent to the controversy, and the Arbitrator's denial is not adequate grounds for vacatur under § 10 of the FAA.  This Arbitrator's denial of the inspection was not only valid under the FAA, but it was consistent with the character of arbitrations, which are typically speedier and more cost-efficient than traditional litigation.

### D. Whether the Arbitrator Exceeded His Powers

Broadly, EDI argues that the Arbitrator's award is contrary to the

Manufacturing Agreement with respect to two provisions: (1) ownership

of the tooling and (2) ownership of confidential information.  The Court

concludes that the Arbitrator properly interpreted and enforced the

Manufacturing Agreement within his powers under the FAA and there is

no reason to disturb the arbitration award.

The FAA provides that a district court may vacate an arbitration

award "where the arbitrators exceeded their powers . . . ."  9 U.S.C. §

10(a)(4).  "[W]hen the arbitrator strays from interpretation and application

of the agreement and effectively 'dispense[s] his own brand of industrial

justice' . . . his decision may be unenforceable."  Major League Baseball

Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).  "In that situation, an

arbitration decision may be vacated under § 10(a)(4) of the FAA on the

ground that the arbitrator 'exceeded [his] powers,' for the task of an

arbitrator is to interpret and enforce a contract, not to make public policy."

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672 (2010).

However, courts "will confirm the arbitrator's award even if [they] are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." McGrann v. First Albany Corp., 424 F.3d 743, 748 (8th Cir. 2005). "We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 751 (8th Cir. 1986).

First, EDI argues that the Arbitrator exceeded his powers by awarding the tooling to Quality Mark because the Arbitrator was going directly against the parties' contractual intent that EDI would gain ownership of the tooling. EDI points out that the Arbitrator recognized that EDI paid $190,000 for the tooling and the Arbitrator heard evidence that Quality Mark made no payments toward the tooling. Therefore the Arbitrator's award of the tooling to Quality Mark does not make sense under the Manufacturing Agreement. (See Award ¶ 6; Frank Aff., Ex. J, at 269.)

Second, EDI argues that the Arbitrator's decision with regard to confidential information is in direct conflict with the parties' intent in the Manufacturing Agreement because the parties expressly agreed that customer lists were confidential information that could not be used "at all times during the term of this Agreement <u>and thereafter</u>." (Manufacturing Agreement ¶ 9.2) (emphasis added).  Even if the Manufacturing Agreement were cancelled, EDI argues that this provision remained in effect even after the Manufacturing Agreement ended.

EDI's arguments do not prevail because it is at least arguable that the Arbitrator, in shaping the award, interpreted the Manufacturing Agreement within his authority.  The Arbitrator's award of the tooling to Quality Mark as damages for unpaid invoices was arguably within his authority under the contract, especially when none of the conditions from the Manufacturing Agreement had occurred to warrant granting ownership of the tooling to EDI.  First, EDI was not entitled to the tooling because it never paid the 50% it owed on the tooling, pursuant to the Manufacturing Agreement.  (Award ¶ 2.)  Second, the Manufacturing

Agreement was terminated after just two years; tooling ownership was

contemplated under the assumption that the Manufacturing Agreement

would be in place for at least five years.  (See id.)  Third, EDI did not pay

the other 50% for the tooling or ask for the tooling to be moved.  Therefore,

it is at least arguable that the Arbitrator properly construed the

Manufacturing Agreement as providing no reason why the tooling should

be owned by EDI.  Accordingly, there is no basis for the Court to disturb

the Arbitrator's decision with respect to tooling ownership.

Regarding confidential information (customer lists), the Arbitrator

did not find sufficient evidence to support EDI's contention that Quality

Mark was using the customer lists improperly.  Furthermore, it is arguable

that selling the product to customers (of whom Quality Mark already

knew) was a reasonable and valid mitigation effort, as the Arbitrator

concluded.  (Award ¶ 4.)  It is also arguably valid to conclude that EDI

repudiated the Manufacturing Agreement by not paying Quality Mark's

invoices, and therefore EDI is no longer entitled to the "confidential

information" clause.  For these reasons, it is arguable that the Arbitrator

properly interpreted the Manufacturing Agreement within his authority,

and there is no reason for the Court to vacate his decision.  For these

reasons, the Court will not disturb the arbitration decision.

### E.  Attorney's Fees

Quality Mark argues that it is entitled to attorney's fees because

EDI's motion is frivolous and made in bad faith, in light of EDI's

demonstrated a pattern of conduct showing it is merely avoiding the

arbitration award.  A court is able to "assess attorney fees against a party

who has acted in bad faith, vexatiously, wantonly, or for oppressive

reasons."  Jaquette v. Black Hawk County, Iowa, 710 F.2d 455, 462 (8th Cir.

1983).  "An unjustified refusal to abide by an arbitrator's award may

constitute bad faith for the purpose of awarding attorneys' fees."  Int'l

Union Auto., Aerospace & Agric. Implement Workers of Am. v. United

Farm Tools, Inc., 762 F.2d 76, 77 (8th Cir. 1985) (citations omitted).

Quality Mark points to EDI's use of a fictional name as an arbitration

claimant, efforts to obstruct discovery, pattern of repeatedly amending

pleadings to avoid dismissal, filing of the another litigation against the

company known as Sierra, and filing of the present motion as measures that demonstrate EDI's intent to delay and avoid its obligations under the arbitration award.  For these reasons, Quality Mark requests that the Court award Quality Mark attorney's fees in this matter.

The Court declines to find bad faith in this matter.  Many of the events cited by Quality Mark occurred at arbitration or in another lawsuit. Aside from Quality Mark's own theories regarding EDI's alleged ulterior motives, the Court finds nothing in the record to adequately support a finding of bad faith.  Specifically regarding the motion before the Court, while EDI's assertions were ultimately incorrect, they were not "[a]n unjustified refusal to abide by the arbitrator's award."  See id.  Therefore, the Court will not award attorney's fees in this matter.

## F.  Prejudgment Interest

Quality Mark also requests prejudgment interest from the date of the arbitration award until the date of the Court's judgment.  Prejudgment interest is appropriate "when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would

otherwise fall short of making the claimant whole because [it] has been

denied the use of the money which [it] was legally due." <u>Marquis Yachts

v. Allied Marine Grp. Inc. (North)</u>, Civil No. 09-1770, 2010 WL 1380137, at

*10 (D. Minn. 2010).

Here, the amount of damages is certain because it was ascertained

by the Arbitrator.  Quality Mark requests that the Court award post-

award, pre-judgment interest at a rate of 8%.  <u>See</u> <u>Stroh Container Co.</u>, 783

F.2d at 751-52 (upholding a district court award of post-award,

prejudgment interest on a confirmed arbitration award).

By not paying on the arbitration award, EDI had use of money that

was legally due to Quality Mark.  While Quality Mark has not shown that

EDI's suit for vacatur was pursued in bad faith, the litigation nevertheless

caused a delay that justifies an award of prejudgment interest.

Additionally, the Court has been presented with no exceptional

circumstances that would make an award of pre-judgment interest

inequitable here.  <u>See</u> <u>id.</u> at 752 ("[P]rejudgment interest should ordinarily

be granted unless exceptional or unusual circumstances exist making the award of interest inequitable.").

Accordingly, the Court grants Quality Mark's request for post-award, pre-judgment interest in this matter from the date of the arbitration award to the date of this Court's judgment confirming the award.  The Court awards post-award, pre-judgment interest at a rate of 8%, which is the rate of pre-award interest in the arbitration award.  (Award, at 5.) While EDI opposes pre-judgment interest on other grounds, it does not dispute this rate.

## IV.    CONCLUSION

The Court concludes that there is no reason to vacate the arbitration award under the FAA.  Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Engine Distributors, Inc. and Osco Motors Company, LLC d/b/a Osco Motors Corporation's Motion to Vacate Arbitration Award [Docket No. 2] is **DENIED**;

2. Respondent Quality Mark, Inc.'s Motion to Confirm Arbitration

29

Award and for Interests and Costs [Docket No. 26] is **GRANTED in part and DENIED in part**, as follows:

a. Respondent Quality Mark's motion to confirm arbitration award is **GRANTED**;

b. The March 11, 2014 award of the tooling and $302,052 entered by the American Arbitration Association's Commercial Arbitration Tribunal [Docket No. 28, Ex. A] is **CONFIRMED**;

c. The Court **DENIES** Respondent Quality Mark, Inc.'s request for attorney's fees; and

d. Judgment shall be entered by separate document providing that judgment in the amount of $302,052 is hereby entered in favor of Respondent Quality Mark, Inc., plus post-award, pre-judgment interest at a rate of 8% from March 11, 2014 to the date of this judgment.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   August 21, 2014                  s/ Michael J. Davis
                                          Michael J. Davis
                                          Chief Judge
                                          United States District Court